IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LM INSURANCE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. CV410-239 |
| ) | |
| PB EXPRESS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## O R D E R

Before the Court is Defendant PB Express's ("PBX") Motion to Dismiss Amended Complaint. (Doc. 16.) For the following reasons, Defendant's motion is **DENIED**.[1]

### BACKGROUND

Defendant operates as an intermodal motor carrier.[2] (Doc. 11 at 1.) Primarily, Defendant transports inbound freight from a port or railroad ramp to the ultimate destination, or outbound export freight from the point of origin to a port or railroad ramp. (Id. at 1-2.) As part of this activity, Defendant has dispatch terminals in close

---

[1] Defendant's first Motion to Dismiss (Doc. 11), based on the original complaint and incorporated by reference into its Motion to Dismiss Amended Complaint, is **DISMISSED AS MOOT**.

[2] The following facts are construed in the light most favorable to plaintiff, with all well-pled facts in the amended complaint accepted as true. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1250 (11th Cir. 2007)).

proximity to the container sea ports of Charleston, South Carolina and Savannah, Georgia. (Id. at 2.) According to Defendant, while it employs clerical staff to assist in dispatching, it contracts with independent owner-operators to physically transport the shipping containers. (Id. at 2-3.)

Prior to 2010, Defendant's employees at the Charleston and Savannah terminals were covered by a commercial workers compensation insurance policy issued by Plaintiff LM Insurance Corporation. (Id. at 2.) Defendant obtained this policy by applying for coverage through the Georgia Workers Compensation Insurance Plan ("Georgia Plan"). (Doc. 13 ¶ 6.) In order to apply for coverage, the employer must submit a written application to the Georgia Plan's administrator, along with an estimated premium deposit. (Id. ¶ 8.) The premium deposit is based on the number of employees and the type of work they perform, and is initially estimated by the employer. (Id.) After receiving the application and premium deposit, the Georgia Plan administrator issues an insurance binder and randomly designates an insurance carrier to issue a workers compensation policy. (Id. ¶ 10.) Because the employer calculated the initial premium and deposit, the employer's payroll information is subject to audit by the insurance

company and may be revised based on the results of the audit. (Id. ¶ 11.)

In this case, Defendant submitted an application for workers compensation insurance through the Georgia Plan on November 10, 2003. (Id. ¶ 12.) In the application, Defendant estimated that it employed only eight clerical employees at a total payroll of $250,000. (Id.) The Georgia Plan administrator assigned Plaintiff as the insurance provider for Defendant's policy. (Id. ¶ 13.) Without performing any auditing, Plaintiff issued an insurance policy in 2003, which was renewed annually through 2009. (Id. ¶ 15.)

From 2005 through 2008, Plaintiff notified Defendant around the policy's renewal date that the "insurance policies provided coverage to all employees of [PBX's] subcontractors who do not have workers' compensation insurance." (Id. ¶ 16.) Defendant continuously maintained that it did not directly employ truck drivers. (Id. ¶ 17.) In addition, Defendant continuously represented that it only hired subcontractors that carried their own workers compensation policies. (Id.) Based on these representations, Plaintiff issued policies based only on the clerical payroll. (Id. ¶ 19.)

3

In June of 2009, however, Plaintiff received a claim for workers compensation from Fredrick Kohler. (Id. ¶ 21.) Mr. Kohler worked for Essau Bowens ("Bowens"), a subcontractor hired by Defendant to transport shipping containers. (Id.) The claim was filed with Defendant's insurance carrier because Bowens did not carry workers compensation insurance. (Id. ¶ 22.) Based on this claim, Plaintiff requested additional information from Defendant when auditing the 2008 policy, designed to help Plaintiff assess its exposure to workers compensation claims from uninsured trucking subcontractors. (Id. ¶ 23.) However, Defendant never supplied the requested information, subsequently cancelling the 2009 policy. (Id. ¶¶ 24-25.) Following the cancellation, Plaintiff requested information to perform an audit of the 2009 policy. (Id. ¶ 26.) Once again, Defendant did not provide the requested information. (Id. ¶ 27.) Using the only information it possessed—the single claim by Mr. Kohler—Plaintiff recalculated the premiums for the 2008 and 2009 policies and billed Defendant $493,907.37 in additional premiums. (Id. ¶ 28.) Defendant has not paid the additional premiums. (Id. ¶ 29.)

Based on Defendant's refusals, Plaintiff filed a complaint in this Court on October 12, 2010. (Doc. 1.)

After Defendant filed its first Motion to Dismiss (Doc. 11), Plaintiff filed an amended complaint on December 3, 2010 (Doc. 13). In the amended complaint, Plaintiff brings one claim for breach of contract, alleging that Defendant breached the terms of the insurance policy by failing to provide the information requested during the audits of the 2008 and 2009 policies. (Id. ¶ 41.) In addition, Plaintiff contends that Defendant violated the terms of the 2008 and 2009 policies by failing to pay the additional premiums. (Id. ¶¶ 42-43.)

Subsequent to Plaintiff filing the amended complaint, Defendant filed a Motion to Dismiss Amended Complaint. (Doc. 16.) In the motion, Defendant argues that the Court lacks diversity jurisdiction over this matter because there is no allegation that Defendant "actually employed drivers in Georgia sufficient to create an amount in controversy exceeding $75,000." (Doc. 16 at 3.) Also, Defendant contends that it did not contract with Plaintiff to provide workers compensation insurance coverage for the employees of any independent owner-operators. (Id. at 4-6.) Finally, Defendant maintains that it was not required to provide workers compensation coverage for its subcontractors. (Id. at 8-12.)

5

In response, Plaintiff argues that this Court has diversity jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. (Doc. 17 at 2-4.) Also, Plaintiff contends that Defendant was required to carry workers compensation according to Georgia law, which made Defendant responsible for the uninsured employees of its subcontractors. (Id. at 8-11.) Plaintiff reasons that the policies in question insured the risk faced by Defendant under Georgia law, which exposed Defendant to claims made by the uninsured employees of Defendant's subcontractors. (Id.)

## ANALYSIS

I. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).[3] "A pleading that offers labels and

---

[3] Iqbal makes clear that Twombly has been the controlling standard on the interpretation of Federal Rule of Civil Procedure 8 in all cases since it was decided. Iqbal, 129

6

conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 129 S. Ct. at 1949 (internal quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. For a claim to have facial plausibility, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). Plausibility does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. Additionally, a complaint is sufficient only if it gives " 'fair notice of what the

---

S. Ct. at 1953 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8 . . . [that] in turn governs the pleading standard in all civil actions and proceedings in the United States district courts." (internal quotations and citations omitted)).

. . . claim is and the grounds upon which it rests.' " Sinaltrainal, 578 F.3d at 1268 (quoting Twombly, 550 U.S. at 555).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal, 578 F.3d at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-50. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Sinaltrainal, 578 F.3d at 1268. That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545).

Generally, a motion to dismiss should be decided based on the contents of the complaint. Emmons v. Smitt, 149 F.2d 869, 871 (6th Cir. 1945). However, the Court may also consider documents that are attached to the complaint or incorporated by reference. Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co., 220 F.R.D. 39, 40 (S.D.N.Y.

2004). In addition, the Court may consider other documents, not attached to the complaint, if referenced by the plaintiff in the complaint and central to the plaintiff's claims. Greenberg v. Life Ins. Co., 177 F.3d 507, 514 (6th Cir. 1999); Prince Heaton Enters., Inc. v. Buffalo's Franchise Concepts, Inc., 117 F. Supp. 2d 1357, 1361 n.2 (N.D. Ga. 2000). Therefore, the Court will review the insurance policies in question, along with the amended complaint, in ruling on Defendant's motion because the policies are mentioned repeatedly throughout the amended complaint and are central to Plaintiff's claim.

II. CHOICE OF LAW

The parties dispute what law applies to this case. Therefore, it is necessary for the Court to first determine the applicable law. In its motion, Defendant contends that Ohio law governs the insurance policies because they were delivered to its corporate office in Ohio. (Doc. 16 at 8.) Plaintiff, on the other hand, argues that Georgia law applies because the contracts were performed in Georgia. (Doc. 17 at 8-10.)

When dealing with contractual disputes, "Georgia continues to follow the traditional choice of law rule, lex loci contractus, i.e., the law of the place where the contract was executed applies." Hostetler v. Answerthink,

9

Inc., 267 Ga. App. 325, 329, 599 S.E.2d 271, 275 (2004) (citing Gen Tel. Co. of the S.E. v. Trimm, 252 Ga. 95, 96, 311 S.E.2d 460, 461 (1984)).  The place of delivery of an insurance contract is where it is constructively made and that location is controlling in resolving a choice of law issue.  O'Neal v. State Farm Mut. Auto Ins. Co., 243 Ga. App. 756, 757, 533 S.E.2d 781, 782 (2000); Batson-Cook Co. v. Aetna Ins. Co., 200 Ga. App. 571, 572, 409 S.E.2d 41, 43 (1991).  However, "where [the] contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply."  Fed. Ins. Co. v. Nat'l Distr. Co., 203 Ga. App. 763, 765, 417 S.E.2d 671, 673 (1992) (citing Gen Elec. Credit Corp. v. Home Indem. Co., 168 Ga. App. 344, 349, 309 S.E.2d 152, 157 (1983)).  Also, where the contract does not anticipate a particular place of performance, Georgia courts apply the law of the place where the contract was made.  Batson-Cook, 200 Ga. App. at 572, 409 S.E.2d at 43.

In Batson-Cook, Defendant issued an insurance policy in Florida through its Atlanta, Georgia agent.  Id.  The insurance policy provided coverage for the insured's activities in numerous states where the insured conducted business.  The Georgia Court of Appeals held that "since

insurance contracts often have no particular place where performance is contemplated, it is reasonable to apply the law of the place where the contract was made." Id. (citing Gen. Elec., 168 Ga. App. at 349, 309 S.E.2d at 157). Similar to the contract in Batson-Cook, the policy in this case contemplated performance in two different states: South Carolina and Georgia. (Doc. 17, Ex. 2 at 5.) Therefore, it is difficult for this Court to conclude that performance of the contract was contemplated to be in any one state, particularly Georgia. As a result, this Court finds that Ohio law is applicable when interpreting the insurance policies at issue in this case.

## III. DIVERSITY JURISDICTION

As an initial argument, Defendant appears to reason that this Court lacks diversity jurisdiction because there is "no allegation that PBX actually employed drivers in Georgia sufficient to create an amount in controversy exceeding $75,000." (Doc. 16 at 3.) In support of this argument, Defendant states that Plaintiff has only alleged that additional premiums may be due, an amount insufficient to establish the $75,000 in damages necessary to invoke this Court's diversity jurisdiction. (Id.)

The Court is somewhat struck by the absurdity of Defendant's argument. The amended complaint clearly

11

alleges that Plaintiff is entitled to $493,807.97 in additional premiums. (Doc. 13 ¶ 45.) Defendant seems to take issue with Plaintiff's failure to allege that Defendant "employed any drivers in Georgia during the relevant policy period." (Doc. 16 at 2.) The Court, however, fails to see the importance of this distinction. Indeed, Plaintiff's claim is premised in part on the allegation that Defendant contracted with trucking companies that did not carry workers compensation for their employees, thereby making Defendant responsible for workers compensation claims brought by the subcontractor's employees. In any event, the Court does not see how Plaintiff has failed to establish the requirements to invoke this Court's diversity jurisdiction, despite Defendant's bizarre protestations to the contrary.

IV.  BREACH OF CONTRACT

Under Ohio law, the Court must interpret a contract to give effect to the intent of the parties. Westfield Inc. Co. v. Galatis, 100 Ohio St. 3d. 216, 219, 797 N.E.2d 1256, 1261 (2003) (citing Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos., 86 Ohio St. 3d 270, 273, 714 N.E.2d 898 (1999)). When reviewing an insurance contract, the Court must examine the entirety of the contract, presuming that the intention of the parties is reflected in the language of

the policy. Id. (citing Kelly v. Med. Life Ins. Co., 31 Ohio St. 3d 130, 509 N.E.2d 411 (1987)). In addition, the Court must "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." Id. (citing Alexander v. Buckeye Pipe Line Co., 53 Ohio St. 2d 241, 374 N.E.2d 146 (1978)). Where that language of the policy is clear, the Court may look no further than the policy itself when determining the intent of the parties. Id.

Looking at the plain language of the policies in this case, it is clear that the parties contracted for Plaintiff to provide Defendant workers compensation insurance under Georgia's workers compensation scheme. Item 3.A of the policies' information page clearly states that Plaintiff is providing insurance pursuant to the "Workers Compensation Law" of Georgia and South Carolina. (Doc. 17, Attach 2 at 3, 31.) In addition, the polices define "Workers Compensation Law" as "the workers or workmen compensation law and occupational disease law of each state or territory named in item 3.A of the information page:" Georgia and South Carolina. (Id., Attach. 2 at 12, 44.) Therefore, it is clear that while Ohio law governs the interpretation of the policies, the policies themselves state that Georgia

13

workers compensation law governs the amount and scope of coverage.[4]

### A. Failure to Provide Requested Documents

Taking Plaintiff's factual allegation as true, Plaintiff has stated a claim upon which relief can be granted for breach of the 2008 and 2009 insurance contracts based on Defendant's failure to provide Plaintiff with the documents requested during the policy audits. Under the plain language of the policies, Defendant is required to "keep records of information needed to compute premium" and "provide [Plaintiff] with copies of those records when [Plaintiff] ask[s] for them." (Doc. 17, Attach. 2 at 18, 50.) Therefore, the Court concludes that Plaintiff's allegation that Defendant failed to provide the

---

[4] Even without the policy language, the Court would still apply Georgia workers compensation law to this action. Georgia courts will not apply the law of another state if its application would be contrary to Georgia public policy. Fed. Ins. Co., 203 Ga. App. at 766, 417 S.E.2d at 674; see, e.g., Hulcher Servs., Inc. v. R.J. Corman R.R. Co., 247 Ga. App. 486, 543 S.E.2d 461 (2000). As discussed below, see infra Part IV.B, Georgia has enacted O.C.G.A. § 34-9-8(a), placing workers compensation liability for uninsured employees of subcontractors on the contracting entity. Defendant's argument concerning the applicability of Ohio workers compensation law, if correct, would render O.C.G.A. § 34-9-8(a) a nullity for subcontractors hired by a foreign entity that is conducting business in Georgia because Ohio has not enacted any similar provision. Therefore, Georgia courts would not apply Ohio workers compensation law because to do so would be contrary to Georgia public policy.

documentation requested to perform an audit of the 2008 and 2009 policies states a valid claim for breach of contract. Accordingly, Defendant's motion is **DENIED** with respect to this claim.

B. Unpaid Premiums

As noted above, the polices in this case provide coverage according to Georgia workers compensation laws. Under O.C.G.A. § 34-9-8(a), "[a] principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer." The purpose of this statute is to pressure employers to require that the subcontractors they hire to assist them in conducting business carry workers compensation insurance. See Franks v. Avila, 200 Ga. App. 733, 733, 409 S.E.2d 564, 566 (1991). This pressure is applied by rendering the employer secondarily liable for workers compensation benefits in the event of a workplace injury. See id. In this case, the policies in question provided Defendant coverage according to Georgia law. Therefore, Plaintiff provided insurance coverage for the employees of those subcontractors Defendant chose to hire that did not independently carry workers compensation insurance.

15

In certain situations, if an insured incorrectly represents to their workers compensation insurer that they do not have any uninsured subcontractors, the insured will be liable for any unpaid premium arising from the misrepresentation. Brewer v. Royal Ins. Co. of Am., 283 Ga. App. 312, 313, 641 S.E.2d 291, 292 (2007). In Brewer, the Georgia Court of Appeals held that an insured who incorrectly represented to his insurer that he did not have any subcontractors was liable for the additional premium due once it became evident that he had multiple subcontractors that he paid in cash. Id. The court held that the insurer was providing coverage for the subcontractor's employees under the policy because the contract stated that the premium would be based on remuneration paid for services of all officers, employees, and "all other persons engaged in work that could make [the insurer] liable under . . . this policy." Id.

Similarly in this case, Defendant could be liable for any additional premiums it owed due to any misrepresentation made to Plaintiff about who was receiving coverage under the policies. The language describing whom is covered by the policies is strikingly similar to the policy language in Brewer:

> [P]remium basis includes payroll and all other remuneration paid or payable during the policy period for the services of: 1. All [Defendant's] officers and employees engaged in work covered by this policy; and 2. All other persons engaged in work that could make [Plaintiff] liable under Part One (Workers Compensation Insurance) of this policy.

(Doc 17, Attach. 2 at 17, 49.)  Also, Plaintiff argues that between 2005 and 2008 it sent an annual renewal letter notifying Defendant that Plaintiff was providing coverage for any uninsured subcontractors.  (Doc. 13 ¶ 16.)  Finally, Plaintiff alleges that a claim was filed by Mr. Kohler, an employee of Defendant's uninsured subcontractor, Essau Bowens, in June of 2009 for workers compensation benefits.  (Id. ¶¶ 20-22.)  Prior to this claim, Defendant had never informed Plaintiff that it hired uninsured subcontractors to transport shipping containers.  Based on the limited information possessed by Plaintiff due to Defendant's alleged failure supply the contractually required information, Plaintiff recalculated Defendant's premium for the 2008 and 2009 policies to reflect the actual risk exposure insured by Plaintiff, and sent Defendant a bill for the additional premiums.  (Id. ¶¶ 28-29.)  Defendant has not paid the additional premiums.  (Id. ¶ 29.)

Based on these allegations, Plaintiff has brought a claim upon which relief can be granted. Under Brewer, the failure to pay additional premiums incurred due to earlier misrepresentations concerning the actual risk insured is a valid breach of contract claim. Plaintiff has alleged that the policies in question provided coverage for the employees of uninsured subcontractors, that Defendant incorrectly informed Plaintiff that it did not hire uninsured subcontractors, and that Defendant did, in fact, hire uninsured subcontractors. Therefore, Plaintiff has alleged a valid claim for breach of contract based on Defendant's refusal to pay the additional premiums. Accordingly, Defendant's motion to dismiss must be **DENIED** with respect to this claim.

## CONCLUSION

For the foregoing reasons, Plaintiff has stated a claim upon which relief can be granted. Accordingly, Defendant's Motion to Dismiss Amended Complaint is **DENIED**.

SO ORDERED this 27th day of September 2011.

WILLIAM T. MOORE, JR
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA